UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

ANGEL E. GASTON,

    Plaintiff,

v.                             CASE NO: 5:22-cv-409-WFJ-PRL

CITY OF LEESBURG, et al.

                                   **Dispositive Motion**

    Defendants.

_____/

### DEFENDANTS', CITY OF LEESBURG, CHIEF OF POLICE, NICHOLAS M. ROMANELLI, JOHN G. SOMMERSDORF, JOSEPH IOZZI , DANIEL NAVARRO, CHARLES KETCHUM, GUSTAVO ESCALANTE, DAVID CARVER, STEFANO DAGOSTINO, ERIC W. LAMOREAUX AND ALLEN CARTER'S MOTION TO DISMISS/STRIKE PLAINTIFF'S AMENDED COMPLAINT WITH PREJUDICE AND INCORPORATED MEMORANDUM OF LAW

Defendants, CITY OF LEESBURG ("City"), CITY OF LEESBURG CHIEF OF POLICE "Police Chief"), NICHOLAS M. ROMANELLI ("Romanelli"), JOHN G. SOMMERSDORF ("Sommersdorf"), DOMINIC PAONESSA ("Paonessa"), JOHN LISTON ("Liston"), JOSEPH IOZZI ("Iozzi"), DANIEL NAVARRO ("Navarro"), CHARLES KETCHUM ("Ketchum"), GUSTAVO ESCALANTE ("Escalante"), DAVID CARVER ("Carver"), STEFANO DAGASTINO ("Dagostino"), ERIC W. LAMOREAUX ("Lamoreaux") and ALLEN CARTER ("Carter"), move the Court, pursuant to Rules 8, 10 and 12 Federal Rules of Civil Procedure, for an order Dismissing/Striking **with prejudice** the Amended Complaint filed in this cause and as grounds for such state:

1.     Plaintiff, ANGEL E. GASTON ("Plaintiff") initiated this matter by filing his Complaint in United States District Court for the Middle District of Florida on or about September 12, 2022; an Amended Complaint was filed on June 8, 2023. Plaintiff alleges the City, the Police Chief, and a multitude of individually named and unknown police officers including Defendants Romanelli, Sommersdorf, Paonessa, Liston, Iozzi, Barrett, Navarro, Ketchum, Escalante, Carter, Dagostino, Lamoreaux and Carter are each liable for an alleged violation of his civil rights and various state law claims. To date, only Defendants Romanelli, Sommersdorf, Iozzi, Navarro, Ketchum, Escalante, D'Agostino, Lamoreux and Carter (hereafter collectively the "Officers") have been properly served, so this response is prepared on their behalf.

2.     The Amended Complaint fails to invoke personal jurisdiction or state a claim, as well as fails to allege statutory notice in compliance with §768.28(6)(a), barring the Plaintiff's from recovery from the City. Plaintiff also brings the action against the City's Police Chief; to the extent Chief Iozzi is named in his Official Capacity, he is not the appropriate entity to be named and only the City can be. Plaintiff's Amended Complaint appears to assert the following causes of action against the City: False Arrest (Count 1); First Amendment Retaliation (Count 2); Civil Conspiracy to Deprive of Civil Rights (Count 3); Monell Claim of Failure to Train and Supervise (Count 4); Tort of Negligence (Count 5); Tort of False Arrest

(Count 6); Tort of Negligent Supervision (Count 7); Tort of Civil Conspiracy (Count 8); Tort of Medical Malpractice against Lifestream (Count 9); and Tort of False Imprisonment against Lifestream (Count 10).

4.    The Plaintiff's Amended Complaint generally fails to state a claim upon which relief can be granted against the City or any Defendant and does not comply with the basic pleading requirements of Rules 8 and 10, Fed.R.Civ.P., is a shotgun pleading; and should be stricken and/or dismissed with prejudice, in its entirety, as allowing further amendment would be futile, because there is no viable claim that can be alleged against the City or the Officers based upon the minimal "facts" alleged by Plaintiff.

WHEREFORE, Defendants, CITY OF LEESBURG, CHIEF OF POLICE, NICHOLAS M. ROMANELLI, JOHN G. SOMMERSDORF, JOSEPH IOZZI, DANIEL NAVARRO, CHARLES KETCHUM, GUSTAVO ESCALANTE, DAVID CARVER, STEFANO DAGOSTINO, ERIC W. LAMOREAUX AND ALLEN CARTER respectfully request this Court to enter an Dismissing Plaintiff's Amended Complaint With Prejudice or alternatively, Striking the Amended Complaint, and awarding the Defendants the reasonable attorney's fees and costs incurred in the defense of this action, and any other relief deemed just and proper.

## **MEMORANDUM OF LAW**

## I.    THE PLAINTIFF'S STATE LAW CLAIMS ARE BARRED FOR FAILURE TO COMPLY WITH SECTION 768.28, FLORIDA STATUTES

Although the Amended Complaint is difficult to decipher, in Counts I-V, Plaintiff purports to allege various state law claims against all Defendants. To the extent Plaintiff claims any viable action against the City under state law, his claims should be dismissed pursuant to his failure to allege compliance with the requisite conditions precedent to asserting claims against a municipality. Pursuant to Section 768.28(6), a Plaintiff suing a local government and its employees must also provide notice of intent to sue to the municipality within 3 years of the date of the incident as a condition precedent to filing suit. Plaintiff has failed to allege compliance with the conditions precedent contained in Section 768.28, Florida Statutes, and can no longer do so in compliance with the three (3) years of the date of the incident as statutorily required. The City never received a proper statutory notice within the three-year limitation period set forth. *See Affidavit of Lisa Earl Attached as Exhibit "A."* Therefore, Plaintiffs claims are barred by the applicable statutes of limitations and Section 768.28, Florida Statutes.

## II.    FED. R. CIV. PRO. RULES 8, 10 AND 12(b)(6) – FAILURE TO STATE A CLAIM GENERALLY AND FAILURE TO PROPERLY SEPARATE INTO COUNTS

The Plaintiff's Amended Complaint as whole fails to allege sufficient facts, and fails to state a claim upon which relief can be granted. Pursuant to Rule 12(b)(6),

Fed.R.Civ.P., a claim is subject to dismissal either because it asserts a legal theory that is not cognizable as a matter of law or because the factual tale alleged is implausible. *Twombly*, 550 U.S. at 544, 555, 570. The Amended Complaint fails to comport with the basic pleading requirements of Rule 8. Fed. R. Civ. P. Rule 8 requires a "short and plain statement of the claim" (commonly referred to as "notice pleading") showing entitlement to relief. A pleader must do more than merely incant labels, conclusions, and the formulaic elements of a cause of action. Further, a court will not accept as true bald assertions couched as "facts," legal conclusions masquerading as facts or conclusions contradicted by the Complaint or its exhibits. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949-50 (2009); *Twombly*, 550 U.S. at 544, 55; *Roe v. Aware Woman Center for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001)(quotations omitted). When considering a 12(b)(6) Motion, the Plaintiff's legal conclusions should be isolated, so as to uncover the pleading's pure factual allegations. Pleadings that are unable to "show" the requisite plausible entitlement to relief are thereby exposed by Rule 12(b)(6) at an early stage in order to minimize the costs of time and money by the litigants and the courts. *Twombly*, 550 U.S. at 558.

    In the instant case, the Plaintiff's Amended Complaint contains nothing more than labels, legal conclusions and boilerplate statutory or Constitutional language. Plaintiff has not properly plead factual support for the elements of any claim. If the

legal conclusions contained in the Plaintiff's Amended Complaint were to be isolated, there would be few, if any factual allegations remaining; certainly, insufficient factual allegations to satisfy the "plausibility" requirement of *Twombly* or Rule 8.    The allegations contained in the Amended Complaint are vague and conclusory, and render it difficult, for any Defendant to decipher what actions or omissions Plaintiff contends were unlawful.

All Defendants are referenced by name in most counts of the Amended Complaint, but it is unclear who Plaintiff alleges he is entitled to recover damages from in the jumbled allegations in each count, which lump multiple defendants together, including some who are no longer employed by or were never under the control and supervision of the City, including, but not limited to Sgt. Barrett, unknown Officers and "Lifestream." *Benoit v. Ocwen Financial Corp. Inc.,* 960 F.Supp. 287 (S.D. Fla. 1997).    *Reyes v. City of Miami Beach*, 2008 U.S. Dist. LEXIS 20087, at 11 (S.D. Fla. 2008), citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554, 127 S.Ct. at 1964 (Notice pleading not satisfied with only vague and conclusory allegations that do not advise the defendant what actions each defendant is alleged to have taken).    In fact, Plaintiff even admits in the Amended Complaint that Defendants "Escalante, Carver, Ketchum, Liston, Navarro, Barrett and Paonessa may have assisted" in what Plaintiff contends to be an arrest (but was actually a Baker Act Confinement), but that their names were listed on the letter provided by

the City which simply gave a list of officers that were working on that day. *See Amended Complaint Par. 35-37.*

The Plaintiff's Amended Complaint is also deficient because it is not <u>properly</u> separated into counts pursuant to *Rule 10, Fed.R.Civ.P.* Plaintiff's Amended Complaint should be stricken or dismissed in its entirety as an impermissible shotgun pleading.    The Eleventh Circuit has identified as a "shotgun" complaints: a complaint that asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015). Plaintiff's Amended Complaint contains 10 pages of "factual" allegations, vaguely lumping several Officers together, separated into ten (10) indecipherable Counts, most of which improperly combines claims against multiple named and unnamed Defendants, despite each Defendant's entitlement to immunity and/or sovereign immunity under state and federal law for any liability for the various claims alleged. Plaintiff's practice of lumping multiple defendants together and failing to provide specific allegations has routinely been determined to violate Rule 8's pleading requirements and is also violative of Rule 10. *Lane v. Capital Acquisitions & Mgmt. Co.*, 2006 WL 4590705, at *5 (S.D. Fla. Apr. 14, 2006); *Synergy Real Estate of SW Florida, Inc. v. Premier Prop. Mgmt. of SW Florida, LLC*, 2013 WL 5596795, at *2 (M.D.

Fla. Oct. 11, 2013). *Magluta v. Samples,* 256 F.3d 1282, 1284 (11th Cir. 2001);

*Cramer v. State of Fla., 117* F.3d 1258, 1263 (11th Cir. 1997) (Shotgun pleading

prohibited). *Frugoli v. Winn Dixie Stores, Inc.* 464 So.2d 1292 (Fla. 1st DCA 1985).

Before addressing specific counts of the Amended Complaint, The City contends

that the Amended Complaint as whole is insufficient as a matter of law and should

be dismissed with prejudice in its entirety pursuant to Rules 8, 10 and 12(b)(6),

Fed.R.Civ.P.

### III. THE OFFICERS ARE ENITLED TO QUALIFIED IMMUNITY UNDER FEDERAL AND  LAW (42 U.S.C. § 1983); FLA. STAT § 768.28

Qualified immunity shields government officials performing discretionary

functions from civil liability in § 1983 cases unless they violate clearly established

constitutional rights. Similarly, with respect to the purported federal Constitutional

claims, Plaintiff makes at best only vague, conclusory allegations and statements

that his constitutional rights were violated, and provides labels that are wholly

insufficient to overcome the Officers entitlement to qualified immunity. Many

counts contain state law negligence allegations of "duty", or a

misunderstanding/misapplication of Baker Act criteria, and are insufficient to state

a claim under any federal or state law, let alone a Constitutional violation. *Amended*

*Complaint, Counts 1-10.* The Supreme Court has held that "government officials

performing discretionary functions generally are shielded from liability for civil

damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." *Harlow v.*

*Fitzgerald*, 457 U.S. 800. 818, 102 S. Ct. 2727, 2738 (1982), *Wood v. Kesler*, 323

F.3d 872 (11th Cir. 2003)(Trooper was performing discretionary functions in

making an arrest).  In summary, qualified immunity protects government officers

from civil trials and other burdens of litigation, including discovery, and from

liability if their conduct violates no "clearly established rights of which a reasonable

person would have known."  The qualified immunity doctrine protects government

officers unless the officer's actions are so obviously wrong, in the light of pre-

existing law, that only a plainly incompetent officer or one who was knowingly

violating the law would have done such a thing. *Iqbal,* at 672 (1946).

Because qualified immunity shields government officers in all but exceptional

cases, courts should think long and hard before stripping individual defendants of

immunity.  In examining whether qualified immunity applies, courts must determine

whether Plaintiff's factual allegations if true, establish a constitutional violation, and

whether such constitutional violation was clearly established.  *Keating v. City of*

*Miami,* 598 F.3d 753 (11th Cir. 2010).  At the motion to dismiss stage, once it is

determined the Officers were acting within their discretionary authority (which is

not in dispute here), the procedure for assessing the applicability of qualified

immunity consists of two inquiries.  The first inquiry is whether the Plaintiff's

allegations, if true, establish a constitutional violation. *Hope v. Peltzer*, 536 U.S.

730, 736 (2002).  If there is a violation of a constitutional or statutory right based upon the facts as alleged and construed to be true, then the second inquiry is whether the right was "clearly established." *Behrens v. Regier*, 422 F.3d 1255, 1258 n.7 (11th Cir. 2005).    Whereas here, Plaintiff has not sufficiently alleged violation of a constitutional or statutory right at all, Plaintiff has failed to allege violation of a clearly established right. *GJR, 132 F.3d* at 1367;    *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).  For the reasons set forth in this Motion, there is no factual support for individual liability of any of the Officers.

In the context of a Baker Act commitment, courts analyze whether the officer had arguable probable cause to believe the individual met the criteria for involuntary examination under Fla. Stat. § 394.463.  The court must look to the totality of the circumstances to determine whether arguable probable cause existed to detain Plaintiff under Florida's Baker Act. *See* ⬤*Davis v. Williams*, 451 F.3d 759, 763–64 (11th Cir. 2006). In order to involuntarily commit someone for a mental health examination under the Baker Act, the officer must have "reason to believe that the person has a mental illness and because of ... her mental illness ... [t]here is a substantial likelihood that without care or treatment the person <u>will</u> cause <u>serious bodily</u> harm to ... herself or others in the <u>near future</u>, as evidenced by <u>recent behavior</u>." Fla. Stat. § 394.463(1)(b)(2) (emphasis added). Arguable probable cause exists if a reasonable officer, knowing the information Officer Lamoreaux and Sgt.

Carter, possessed, could have believed that probable cause existed to involuntarily commit Plaintiff. *See Post v. City of Ft. Lauderdale,* 7 F.3d 1552, 1558 (11th Cir. 1993); *Durruthy v. Pastor,* 351 F.3d 1080, 1089 (11th Cir. 2003).

Similarly, Florida Statutes § 768.28 provides that law enforcement officers are generally immune from personal liability unless they act in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. *McGhee v. Volusia County,* 679 So. 2d 729 (Fla. 1996)( Court held that officers acting within the scope of their duties are entitled to immunity unless their conduct meets the threshold for bad faith or malicious purpose). In *Richardson v. City of Pompano Beach,* 511 So. 2d 1121 (Fla. 4th DCA 1987), the court affirmed dismissal of false arrest claims where the officer's actions were within the bounds of discretion under the Baker Act.

There are no facts alleged that would overcome any of the Officers', even the "unnamed officers" qualified immunity from suit and liability pursuant to federal law and to Section 768.28, Florida Statutes. Even if there were, then the City could not also be a named Defendant pursuant to sovereign immunity principles and the clear statutory language contained in Fla. Stat. 768.28 (9), discussed in greater detail below.

The purported state law claims of False Arrest, Negligence, and Negligent Supervision contained in Plaintiff's Amended Complaint must be dismissed against

the Officers because no government official or employee can be held personally liable in tort or named as a party defendant where the official or employee acted within the scope of employment and without malicious purpose. *Fla. Stat.* §768.28(9); *See also McGhee v. Volusia County*, 679 So.2d 729, 733 (Fla. 1996). As mandated in §768.28(9)(a):

> The exclusive remedy for injury or damage suffered as a result of an act, event, or omission of an officer, employee, or agent of the state or any of its subdivisions or constitutional officers shall be by action against ***the governmental entity***, or the head of such entity in her or his official capacity, or the constitutional officer of which the officer, employee, or agent is an employee, unless such act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Importantly, the immunity provided by §768.28(9)(a) is both an immunity from liability *and* an immunity from suit, and "the benefit of this immunity is effectively lost if the person entitled to assert it is required to go to trial." *Willingham v. City of Orlando*, 929 So.2d 43, 48 (Fla. 5th DCA 2006). The "trial judge must act as a gatekeeper in these circumstances and should terminate civil proceedings when the immunity applies." *Id.* In fact, denial of immunity under §768.28(9)(a) is subject to immediate interlocutory review by the appellate court under Rule 9.130 Fla. App. Rules. *Florida Highway Patrol v.* Jackson, 288 So.3d 1179 (Fla. 2020). Under this statute, governmental employees are clothed "with individual immunity that is lost only as to torts committed in bad faith or with malicious purpose or in a

manner exhibiting wanton and willful disregard of human rights and safety."
*Drudge v. City of Kissimmee,* 581 F. Supp. 2d 1176, 1195 (M.D. Fla. 2008), quoting
*Castellano v. Raynor,* 725 So.2d 1197, 1198 (Fla.2d DCA 1999). "Bad faith" and
"malicious purpose" under this statute have been equated with the "actual malice"
standard. In the instant case, Plaintiff has not made a single factual allegation
regarding any of the Officers that would show "bad faith" or "malicious purpose."

Nonetheless, "Actual malice" cannot be proven even when a plaintiff merely
makes a threadbare, conclusory recital that a defendant acted maliciously and in bad
faith. *Eiras v. Florida,* 239 F. Supp. 3d 1331 (M.D. Fla. 2017). "Actual malice"
means the conduct must be committed with ill will, hatred, spite, or an evil intent;
likewise, conduct meeting the wanton and willful standard is defined as worse than
gross negligence, and more reprehensible than mere intentional conduct. *Id.* at 1343-
1344. Additionally, even the allegation that an officer may have acted *without*
arguable probable cause is not enough to pierce the officer's immunity, particularly
in this case, when Plaintiff has not alleged sufficient facts surrounding his statutory
Baker Act confinement to demonstrate that the Constitution is even applicable in
this instance, or that the confinement took place with out arguable probable cause.
*Id.* at 1344, citing *Caldwell v. Nocco,* 2015 WL 9302835, at *5 (M.D. Fla. 2015).

Plaintiff has clearly made no factual allegations sufficient to defeat the
Officers' entitlement to immunity or the City's sovereign immunity from suit under

Federal or Florida Law. In fact, the bulk of the allegations regarding any one of the

Officers are that they, collectively, did not have probable cause to "Baker Act" the

Plaintiff under state law, which Plaintiff contends was an "arrest." Those vague

allegations not only fail to allege any sort of Constitutional protections, but also fail

to overcome the Officers' entitlement to immunity under State or Federal Law as

well. In fact, there are only a few specific allegations against any Officer in the

entire Amended Complaint. The Officers have completed affidavits to demonstrate

each's limited to no involvement or undisputed material facts in this Case. Officers

Ketchum, Navarro, Escalante (called in transport only over police radio) and Lt.

Romanelli had no contact whatsoever with Plaintiff on August 17, 2020 and were

not involved in the decision to confine and transport Plaintiff pursuant to the Baker

Act-they just happened to be on duty; Officers Sommersdorf and D'Agostino spoke

to Plaintiff briefly about the Records Department being closed, but were not

involved in the decision to confine and transport Plaintiff pursuant to the Baker Act.

*See Affidavits of Officers Ketchum, Navarro, Escalante, Sommersdorf and*

*D'Agostino attached herein as Composite Exhibit "B."* The affidavits of Lt.

Romanelli and Chief Iozzi demonstrate that they had limited or no direct

involvement with Plaintiff on 8/17/202 and that the City Officers who did followed

the Baker Act Policy and the Baker Act training that was provided to them. *See*

*Affidavits of Lt. Romanelli and Chief Iozzi, attached as Composite Exhibit "C".* The

affidavits of Sgt. Carter and Officer Lamoreaux, attached herein as *Composite Exhibit "D"* clearly demonstrate that any officers involved in the decision to confine Plaintiff with a Baker Act confinement, did so with at least arguable probable cause.

Sgt. Carter indicated that:

> "Night shift supervisors informed me that they observed Plaintiff in the lobby of the Police Department. He was dragging chairs and blocking exit doors and acting strangely. Another officer told him to put the chairs back. After going outside of the lobby, during a civilian shift change, the records clerks and other female employees expressed concern and fear over his behavior. He was wearing a hockey mask, waving a large stick, banging a Police Department fence with the stick, and using abusive language toward police. He was jumping on the flower beds, and his car was parked with all doors open, and music blasting out of the vehicle at a high volume. Officer Lamoreaux, and his trainee, Officer Dominic Paonessa, observed this behavior as well. Plaintiff is known to keep a multitude of weapons on his person and in his vehicle, displayed in a concerning manner, on more than one occasion. He also has made multiple threats to police officers, so much so that any calls involving Mr. Gaston usually is assigned extra back-up due to Officer safety concerns. We discussed the propriety of a Baker Act commitment and transport and agreed that Plaintiffs increasingly strange behavior met the Baker Act criteria, under Chapter 394, Florida Statutes." *Comp. Ex. "D"*.

Similarly, Officer Lamoreaux observed:

> I am familiar with the Plaintiff, ANGEL GASTON based on multiple encounters between Plaintiff and police both before and after the August 17, 2020, incident that is the subject of Plaintiff's Complaint. Prior to August 17, 2020, Plaintiff had been arrested and had other encounters with police. On more than one occasion he was trespassed from Lee Adult Academy, and four to five officers were sent out due to safety concerns and continuous threats against the police made by Plaintiff. During many interactions with police, Plaintiff is known to have and

displayed multiple weapons, exhibit strange and at times delusional/paranoid behaviors, and even make verbal threats to police, at least one time stating that he would kill officers who aren't doing their jobs correctly. He was also known to be or held himself out to be a two-time blackbelt in Karate, sometimes encountering the police wearing a karate gi, and displaying swords and other weapons both on his person and in his car; and a former "special ops" member. This information was provided to police by Plaintiff's mother, who on occasion would contact police herself and warn them of his erratic behaviors. On or about August 17, 2020, I was working on shift during the early morning hours. I observed Plaintiff in front of the lobby of the Police Department. After he was dragging chairs and blocking exit doors, and acting strangely, he was standing outside with a large broomstick, waving it around frantically, hitting the fence with it, jumping in and out of the flower beds, and using verbally abusive and/or vulgar language directed toward police. While he was jumping on the flower beds, and his car was parked with all doors open, and music blasting out of the vehicle at a high volume. He appeared irate and made statements like "Fu&k You Pigs." He also made several irrational statements along the lines that "The Government" is after him and he knows "they are spying on him." Both myself and my trainee at the time, Officer Dominic Paonessa, observed this behavior as well as Sgt. Carter, and some civilian employees coming into the Department for a shift change. Plaintiff is known to keep a multitude of weapons on his person and in his vehicle, displayed in a concerning manner, on more than one occasion. He also has made multiple threats to police officers, so much so that any calls involving Plaintiff are usually assigned extra back-up due to Officer safety concerns. The Officers that witnessed this behavior discussed the propriety of a Baker Act commitment and transport and agreed that Plaintiff's increasingly strange and concerning behavior met the Baker Act criteria, under Chapter 394, Florida Statutes. After the decision to was made to process Plaintiff or take him into custody under the Baker Act, no vehicle search was conducted of Plaintiffs vehicle. Plaintiff's person was searched, and he was placed in handcuffs prior to his transport to Lifestream Behavioral Center pursuant to procedure for officer safety. Plaintiff's vehicle was locked, and he was provided with the

keys.  Plaintiff was not arrested at any time during this incident.
*Id.*

More importantly, Plaintiff fails to allege a single <u>fact</u> to show the requisite

malice necessary to overcome the immunity afforded to the Officers, even at this

early stage of the proceedings.  To the contrary, the Amended Complaint alleges at

all times that the Officers were within the course and scope of their employment and

does not contain even conclusory labels of "malice."   Further, even if the Officers'

actions were alleged to be taken with malice sufficient to overcome the Officers'

immunity, then the City cannot be liable pursuant to Fla.Stat. §768.28(9), for the

state law claims alleged.  The Officers contend they are not properly named as

Defendants, and are entitled to immunity from suit under Florida law.  However, if

the Plaintiff contends the Officers were acting outside the scope of their immunity,

then the City cannot be liable as a matter of law, and any claims against the City are

time-barred pursuant to Fla. Stat. §768.28.

The City is also entitled to sovereign immunity from suit for the types of

Police Power and other discretionary/planning functions the Plaintiff is vaguely

attempting to attack by citing the vague allegations regarding matters clearly

involving officer and/or City discretion.  In all Counts, Plaintiff, again in conclusory

fashion, alleges that the laundry list of officers should not have "Baker Acted" him.

*Everton v. Willard*, 468 So.2d 936 (Fla. 1985)(Police entitled to immunity from

suits regarding discretionary functions such as whether to make an arrest).

Additionally, Plaintiff attempts to allege liability of the Police Chief and other Administrative Officers for classic discretionary matters for which the Government and its officers have immunity, such as decisions like, Baker Act criteria and policies, determinations regarding the resolution of Plaintiff's complaint to retrieve evidence from a prior arrest of Plaintiff from the records department that was closed on 8/17/2020. Decisions involving police discretion, like whether an arrest should be made, how to train officers, whether to hire and retain officers, etc. are not areas into which a court should intrude. *Lewis v. City of St. Petersburg*, 260 F. 3d 1260, 1265-66 (11th Cir. 2001). (Government and its officers enjoy immunity from suits regarding discretionary functions such as whether to make an arrest). Use of force, decision to make arrests, and what type of policy or procedure is used for disciplinary actions of employees or for use of force are all discretionary/planning functions that are protected by sovereign immunity.

## IV.    PLAINTIFF'S NEGLIGENCE CLAIMS ALSO FAIL TO ALLEGE A LEGAL DUTY OWED BY THE CITY

Alternatively to the claims being subject to dismissal with prejudice due to Plaintiff's failure to timely comply with the statute of limitations and administrative exhaustion requirements of Fla. Stat. §768.28, even taking the Amended Complaint's allegations as true, Plaintiff's counts sounding in negligence theories should be dismissed because City did not owe Plaintiff any duty of care. "If no duty of care is owed with respect to alleged negligent conduct,

then there is no governmental liability." *Pollock v. Fla. Dep't of Highway Patrol*, 882 So.2d 928, 932 (Fla. 2004) (citations omitted). Under Florida law, there has never been a common law duty of care to specific individuals to provide public safety services or enforce the law. *City of Daytona Beach v. Palmer*, 469 So.2d 121, 122 (Fla. 1985; *Steinhardt v. Town of North Bay Village*, 132 So. 2d 764 (Fla. 3d DCA 1961). Plaintiff's negligence claims and those counts sounding in negligence should be dismissed because no legal duty existed between Plaintiff and the City with respect to the acts or omissions that gave rise to this case. Additionally, pursuant to Fla. Stat. §768.28(9), the Officers cannot be named individually for negligent actions as a matter of law. Where questions of duty arise in connection with potential governmental liability, the *Trianon*[1] "taxonomy" provides a guide concerning the four categories of activities that will either support or fail to support a duty of care between a government entity and an alleged tort victim. *Wallace v. Dean*, 3 So. 3d 1035, 1048 (Fla. 2009). Within Category I are legislative, permitting, licensing, and executive officer functions. *Id.* Activities in this category are owed to the public at large and generally fail to support a duty of care owed to an individual. *Id.* Within Category II is the enforcement of laws and protection of public safety. *Id.* Duties with respect to Category II activities are generally owed to the public at large. *Id.* at 1048-49.

---

[1] *Trianon Park Condo. Ass'n, Inc. v. City of Hialeah*, 468 So. 2d 912 (Fla. 1985).

Only those activities in Category III and IV (inapplicable here) may subject government entities to liability based on traditional principles of tort law. *Id.* at 1049. Therefore, for government tort liability to exist, there must be an underlying common law or statutory duty of care to the plaintiff with regard to the alleged negligent conduct. *Layton v. Fla. Dept. of Highway Safety & Motor Vehicles*, 676 So. 2d 1038, 1040 (Fla. 1st DCA 1996). This question precedes the issue of whether the activity is protected by sovereign immunity by way of being a discretionary rather than operational function. *Id.*; *see also Pollock v. Fla. Dept. of Highway Patrol*, 882 So. 2d 928, 935 (Fla. 2004) (inquiring first whether a duty is owed generally to the public or to an individual person).

Moreover, even if a duty of care is owed, a municipality's decisions as to techniques used to provide public safety services are discretionary, planning level decisions for which sovereign immunity applies. *Id.* at 123. As the Florida Supreme Court stated in *City of Daytona Beach v. Palmer*, the decisions of how to properly provide public safety services are discretionary judgmental decisions which are inherent in this public safety function. To hold a city liable for the negligent decisions of its public safety officers would require a judge or jury to second the officers in making these decisions and would place the judicial branch in a supervisory role over basic executive branch, public protection functions in violation of the separation of power doctrine. Even if Plaintiff's Amended Complaint as

alleged could somehow be construed to be sufficient to strip the City of immunity from suit, law enforcement activities and public safety are government duties that are owed to the public generally, unless a plaintiff can establish a "special duty of care" was owed to the plaintiff individually, based upon specific and unique circumstances. *Wallace v. Dean*, 3 So.3d 1035, 1048-49 (Fla. 2009); *Layton v. Fla. Dept of Highway Safety & Motor Vehicles*, 676 So.2d 1038, 1048 (No special duty to accurately maintain public records); *Durkin v. Armatori*, 481 So.2d (Fla. 3d DCA 1985). There are no facts alleged to support any special duty owed to the Plaintiff by the City, and the Officers cannot be named individually for any negligence claims alleged by Plaintiff pursuant to Section 768.28 (9), Florida Statutes. There is simply no properly asserted basis for liability of the City or the Officers and the Amended Complaint should be dismissed with prejudice.

## V. PLAINTIFF'S "FALSE ARREST" CLAIMS FAIL UNDER STATE AND FEDERAL LAW

With respect to the Plaintiff's false "arrest" claims, which appear to be alleged under both state and federal law for purposes of qualified immunity, according to the allegations, it is clear from Plaintiff's own allegations that Plaintiff was never actually "arrested," but instead was placed in confinement under the Baker Act which does not provide a constitutional claim or any claim of false arrest; in fact the allegations merely demonstrate that one or more of the Officers determined that Plaintiff met the criteria for an initial statutory Baker Act confinement, and no arrest

occurred. The "field contact" report, declaring that Plaintiff met the Baker Act criteria, and that he was holding a weapon of a stick, was attached to Plaintiff's Amended Complaint. *See Doc. 18, P. 39.* The handwritten Baker Act forms are considered confidential medical information, so Officers are trained not to report too much detail on this typed form. *See Affidavits of Lt. Romanelli and Chief Iozzi, and Training Documents attached thereto at Pp. 7-12.* Only Officers Lamoreux, Paonessa and Sgt. Carter had any role in compiling these reports and the handwritten form was completed by Officer Paonessa under Officer Lamoreux's supervision and was filed under seal with this Motion to Dismiss to protect Plaintiff's HIPAA rights. It is also unclear from Plaintiff's allegations, which, if any Officer made the decision that Plaintiff met the criteria for the Baker Act. Thus, it appears from the Amended Complaint that Plaintiff is alleging that he was only confined pursuant to the Baker Act, but was never actually arrested. This is apparent by review of Plaintiff's own allegations, where he attaches only the generic report, less detailed report from Officers indicating he met Baker Act criteria. *Doc. 18, Pgs. 39-41.* Further, once a law enforcement officer determines an individual meets Baker Act criteria, the individual is transported to a facility, and the length and type of confinement is determined by the psychiatric professionals who work at such facility and evaluate the individual. *See Fla. Stat. 394.463 (2)(f).*

Since Plaintiff has failed to allege any <u>facts</u> to demonstrate he was even "arrested", this is fatal to the Amended Complaint as all merely allege that a "Baker Act" confinement occurred and not an "arrest." The probable cause standard does not apply to Baker Act confinements, but rather, only the specific statutory criteria combined with a qualified immunity analysis. *Bright v. Thomas,* 754 Fed. Appx. 783, 786 (11th Cir. 2018). *Collins v. State,* 125 S.3d 1046, 1048-49 (Fla. 4th DCA 2013)(Officers do not need to have probable cause to detain under the Baker Act, because there is no "arrest" for purposes of the Fourth Amendment).

Rather, according to the Baker Act, Fla. Stat. Sections 394.463(1) and (1)(b)(2), "a person may be taken to a receiving facility for involuntary examination if there is reason to believe that the person has a mental illness and because of his...mental illness...there is a substantial likelihood that without care or treatment, the person will cause serious bodily harm to himself...or others in the near future as evidenced by recent behavior. *Id.*

In this statute, a police officer is *required* to take a person into custody if the person merely *appears* to meet the Baker Act criteria stated above. The standard is set forth as follows:

> "A law enforcement officer *shall* take a person who *appears to meet the criteria* for involuntary examination into custody...for examination...." Fla. Stat. 394.463(2)(Emphasis supplied).

In these Counts, Plaintiff simply provides nothing more than boilerplate conclusory allegations regarding his Baker Act confinement. Nonetheless, even though 4th Amendment does not apply to Plaintiff's Baker Act Confinement (which according to Plaintiff's own attachments was lawful), if an imprisonment or arrest is under legal authority (here Florida Statute, known as the "Baker Act,") it, by definition, cannot be "false." *Wood v. Kesler*, 323 F. 3d 872, 878 (11th Cir. 2003); *Lee v. Ferraro,* 284 F. 3d 1188, 1195 (11th Cir. 2002); *Dodson v. Solomon*, 134 Fla. 284 (1938); *Willingham v. City of Orlando*, 929 So.2d 43 (5th DCA 2006). This is true where legal authority is shown by valid process even if that process is later deemed irregular or voidable. *Id.* In the instant case, even the mere existence of the Baker Act and the Officers' determination that Plaintiff met the criteria is an absolute bar to a claim for false arrest and provides authority for the arrest. *Mally v. Jenne,* 867 So.2d 1250 (4th DCA 2004); *Illinois v. Gates,* 462 U.S. 213 (1983).

There are no facts alleged to demonstrate that the City or the Officers violated a clearly established constitutional right of the Plaintiff. The Baker Act is not a source of Constitutional rights. Plaintiff cites to no other substantive right; rather alleges implausible conclusions that the City and/or Officers "violated his 1[st] Amendment and 4[th] Amendment rights," again based upon the erroneous premise that a Baker Act confinement is an "arrest."

The Plaintiff also fails to allege any basis for recovery against The City under

Count 4 "Monell Claim" upon the vaguely alleged acts of the Officers. The City cannot be liable for a claim under 42 U.S.C. § 1983 on the basis of *respondeat superior*. *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 694-95(1977); *Busby v. City of Orlando,* 931 F.2d 764, 776 (11th Cir. 1991). In order for a local government entity to be liable for a §1983 claim, an official policy or custom must be the <u>moving force</u> behind the alleged Constitutional violation. There is no factual evidence regarding any acts, policy or custom of The City or any officer sufficient to provide a basis for liability for the claims alleged by Plaintiff, only conclusory allegations of "conspiracy" and "negligent supervision" premised on a Baker Act confinement and not an actual arrest. *Reyes*, at 5, citing *Hall v. Smith*, 170 Fed. Appx. 105, 108 (11th Cir. 2006)(affirming dismissal of Section 1983 claim against city where plaintiff alleged no factual support for conclusion that city had a policy or custom). *Id.* There is no evidence that any officer committed any violation of Plaintiff's rights period, let alone that some City Policy or custom was the cause of a constitutional violation. In fact, the Plaintiff has failed to identify any City Policy regarding the Baker Act or otherwise, let alone that the policy was violated or otherwise unconstitutional. Additionally, even if Plaintiff cognizable claim under the theories labeled in the Counts, such claims could only be alleged against either the City or the Officers in their individual capacities, but not both, as Plaintiff has attempted here.

## VI.    PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES SHOULD BE STRICKEN

Pursuant to 42 U.S.C. §1983, §1988 and §768.28(5), Fla. Stat., punitive damages are not recoverable against a municipality, government entity or a political subdivision. There can be no real dispute that The City is a state agency or subdivision under §768.28(2) and (5). See also Fla. Stat. 768.28(2),(5)(stating that counties and municipalities are considered "State agencies and subdivisions" and exempt from punitive damages and prejudgment interest); *Erickson v. Hunter*, 932 F.Supp. 1380, 1385 (M.D.Fla.1996)(recognizing that Collier County, Florida is a political subdivision and exempt from punitive damages in a discrimination action).

Similarly, Plaintiff has made no <u>factual</u> allegations regarding any conduct of all the named Officers, Chief Iozzi and Lt. Romanelli that Plaintiff contends was even unlawful or outside the course and scope of their employment, let alone any allegations to support a claim that each Officer acted with malice or reckless indifference as required to recover punitive damages against them. Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, the Court is permitted to strike from pleadings any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. Accordingly, Plaintiff's claims for punitive damages against the City and the Officers contained in the Amended Complaint should be stricken as a matter of law.

## VII.  CONCLUSION

The Amended Complaint contains egregious pleading deficiencies evidencing that dismissal with prejudice is appropriate, as the Plaintiff cannot state a plausible claim for relief, and allowing further amendment would be futile and would be a waste of time, effort, and judicial resources.   Dismissal with prejudice is clearly proper where, as here, there was a complete failure to comply with Fed. R. Civ.P. Rules 8 and 10. *Dismuke v. University of South Fla. Bd. Of Trustees,* 2006 WL 166456, *3 (M.D. Fla. 2006).  Though Plaintiff is proceeding *pro se, pro se* litigants are not relieved of the obligation to comply with the pleading requirements of Rule 8.  *Lampkin–Asam v. Volusia County School Bd.,* 261 F. App'x 274, 276 (11th Cir. 2008) (dismissing *pro se* Plaintiffs' second amended complaint**,** with prejudice, for being a "labyrinth of claims, counts, accusations and repetition.").  A district court need not allow an amendment whereas here, amendment would be futile. *Anderson,* 304 F. App'x at 832 (*quoting Bryant v. Dupree,* 252 F.3d 1161, 1163 (11th Cir.2001)); *accord Jeremiah v. Burnette,* 297 F. App'x 854, 855 (11th Cir. 2008) (holding that a district court may properly deny a *pro se* plaintiff leave to amend when such amendment would be futile**.**) (*citing Hall v. United Ins. Co. of Am.,* 367 F.3d 1255, 1263 (11th Cir. 2004)).

WHEREFORE, Defendants, DEFENDANTS, CITY OF LEESBURG, CHIEF OF POLICE, NICHOLAS M. ROMANELLI, JOHN G. SOMMERSDORF,

JOSEPH IOZZI, DANIEL NAVARRO, CHARLES KETCHUM, GUSTAVO ESCALANTE, DAVID CARVER, STEFANO DAGOSTINO, ERIC W. LAMOREAUX AND ALLEN CARTER, respectfully request the Court to without waiving any arguments as to personal jurisdiction, Strike or Dismiss Plaintiff's Amended Complaint with Prejudice, award Defendants the reasonable costs and attorney's fees incurred in filing this Motion to the extent allowed by law, and award any such other relief the Court deems appropriate.

Respectfully submitted by:

/s/ *Stephanie J. Brionez*

STEPHANIE J. BRIONEZ, ESQ.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by email transmission through the Florida Courts E-Filing Portal to: Angel E. Gaston, South Florida Reception Center, Cell #L1201: DC# 020151, 14000 NW 41st Street, Doral, FL 33170 this 1st day of May, 2025.

/s/ *Stephanie J. Brionez*

STEPHANIE J. BRIONEZ
Florida Bar No. 0638161
Brionez + Brionez, P.A.
P.O. Box 985
Tavares, FL 32778
352-432-4044 – office
352-609-2876 – fax
Primary Email: StephB@bblawfl.com
Secondary: WendyC@bblawfl.com
Attorney for Defendants