# EXHIBIT "B"

# EXHIBIT B

Affidavit of Angel E. Gastón

United States District Court
Middle District of Florida
Ocala Division

Angel E. Gaston
Plaintiff

Case No: 5:22-CV-409-WFJ-PRL

V.

City of Leesburg, et al.
Defendant(s)

## Affidavit of Angel E. Gaston

State of Florida
County of Sumter

Before me, the undersigned authority, on this day personally appeared, Angel E. Gaston, known to me, or proved to me on the basis of Florida Department of Corrections ID with number 020151, to be the person whose name is subscribed below, and under oath did state the following:

1.) My name is Angel E. Gaston. I am over the age of eighteen years, and in all things competent to attest to the matters herein, and otherwise sui juris.

2.) I am currently incarcerated at the Florida Department of Corrections, Sumter Correctional Institution.

3.) My inmate identification number is 020151.

4.) All charges by the LPD officers on both 8/14/2020 and 10/27/2020 were dropped by the state prosecutor.

5.) On 8/17/2020 LPD officers effectively chilled my 'sit and wait' protest by maliciously declaring a false medical emergency (Baker Act)

pg. 1 of 9

6.) Facts underlying the event in this claim
   A.) <u>What Happened</u>:

1.) On August 17th, 2020 I (Angel E. Gaston) went to the Leesburg Police Department ("LPD") to retreive personal items that had been unlawfully taken by LPD officers on a previous occassion and to express my critisism of the recent actions taken by the officers.

2.) The First defendant that responded to my request ("Dagostino") explained that though the LPD is always open, the evidence section of the department was currently closed.

3.) I told Dagostino that I would "sit and wait" in the parking lot of the LPD until the office opened in the morning. Performing a "sit and wait" was my way of openly protesting the recent unlawful actions taken by the LPD.

4.) Defendant Dagostino did not object to my decision to stay in the parking lot and left me without any action taken or warning given.

5.) Defendant Sommersdorf came about an hour later and reiterated that the evidence section of the department was closed.

6.) I confirmed with Sommersdorf what I had told Dagostino; that I was in a public government location and was permitted to "sit and wait" for the department to open in several hours.

7.) Sommersdorf confirmed I was on public property and that I could "sit and wait" if I wanted to. Specifically he said, "do whatever you want". Again I sat and waited at the LPD parking lot for the evidence department to open with no action taken or warning given by LPD officers.

8.) I sat and waited for several hours without incident when I noticed what looked like a shift change of the police officers at the station.

9.) Again a few officers (unknown) approached me to reiterate that the evidence section of the department was closed. I again informed them that I had been and would be siting and waiting in the parking lot until the evidence department opened. The unknown officers then left me with no action taken or warning given.

pg. 2 of 9

10.) Several moments after those officers returned to the station, they and a group of 7-9 police officers gathered within the gates and could be seen to have come to an agreement. They then, as a group, came out from behind the gates of the police station.

11.) I thought this was a strange show of force, so I took out my cell phone and began to use the "Live" feature on my facebook application to video record the next actions of the officers.

12.) Then without warning or command, unknown officer #1 began to approach me agressively.

13.) I noticed he had blue medical gloves on, so I asked (suspecting a confrontation) "officer, why do you have gloves on?"

14.) Unknown Officer #1 did not respond, but continued to walk towards me as the other 7-9 officers began to surround me.

15.) I started to take steps backwards while recording on my "Live" feature of the Facebook app, when suddenly unknown officer #1 grabed my left wrist (I froze) and another officer snatched my cell phone from my hand.

16.) The officer with my cell phone began to do something on my phone while the others physically restrained me and searched me and my vehicle.

17.) I asked the officers, "What are you all doing?"

18.) I asked, "What am I being arrested for?" But I received no responce from any of the officers.

19.) After having my person and my belongings searched, I was detained and/or arrested without probable cause.

20.) Unknown Officer #2 in the group eventually stated that I was being "Baker Acted".

21.) I told them that they couldn't do that because I did not meet the requirements for Florida's "Baker Act" law, (reference FL. Stat. Ann. §394.463)

22.) I told the group of police officers, "I am of right mind in knowing current place and time, and I am not a threat to myself or others. I do not meet the requirements for a "Baker Act"."

pg. 3 of 9

23.) Nevertheless, I was detained against my will by the defendant group of officers and taken to the Life Stream Behavioral Center ("Lifestream") in Leesburg, FL for involuntary commitment by Lamoreaux and Carter.

24.) When we arrived at "Lifestream" I was not permitted to enter the facility until I passed a COVID-19 test, due to having had recent contact with a family member who had COVID-19.

25.) Defendants Lamoreaux and Carter called for an ambulance to take me to the Leesburg Hospital where I waited for COVID-19 testing.

26.) At the hospital I was given the COVID-19 test and cleared of having the COVID-19 virus.

27.) After the hospital testing I was taken back to "Lifestream" by LPD.

28.) Defendants Sommersdorf and Dagostino had responded to the same location on two seperate times earlier that same morning and cleared the "events" with no actions taken or warnings given; and no need for medical detention and/or "Baker Act". (See Exhibit "A", LPD Event ID 2020-39522 and Event ID 2020-39525)

29.) Defendant Iozzi was the policy maker (administrator) in the group of police officers that approved the use of the "Baker Act" against me, the plaintiff.

30.) Unknown Officer #3 (T16) was one of the officers in the group that assisted in the unlawful search and arrest according to LPD event ID 2020-39535

31.) Unknown Officer #4 (T27) was one of the officers in the group who assisted in the arrest and unlawfully searched my vehicle according to LPD Event ID 2020-39535.

32.) Defendant Carter was the one in the group of officers who reported the unlawful arrest and/or detention on LPD Event ID 2020-39535

33.) This involuntary commitment ("Baker Act") was used by the defendants to inhibit, punish, and deter my "sit in" open critisism of officers actions.

34.) My critisism and "sit in and wait" expression of protest of the government and/or police department is a protected excercise of my First Amendment Constitutional right to free speech and/or peaceful demonstration.

Pg. 4 of 9

B.) Known Facts.

1.) On 8/14/2020 LPD officers Wiley and Iozzi refused to give me back my property (which other officers had taken from the Lee Center).

2.) Wiley and Iozzi wanted me to sign a release of property slip which only included my wallet and stated that they were returning all of my property to me.

3.) I refused to sign and they refused to give me my wallet, therefore I walked out of the LPD lobby.

4.) Iozzi followed me outside with officer Abston and placed me under arrest for criminal mischief at the Lee Center. This was a false accusation that was later dropped by the state prosecutor.

5.) Unknown to me was that LPD officers searched my car and wrongfully confiscated my prescribed medical marijuana and accessories; all which were legally obtained, legally carried, and properly labeled therefore, I was not criminally charged with possession of drugs.

6.) After bonding out of jail I returned to the police department and signed for my wallet, not knowing (nor was I told) LPD also had my medication and accessories.

7.) After several days of looking for my medication and accessories, I reviewed the arrest documents and found the reference to my prescribed medical marijuana and accessories under LPD case #20-08-0180 arrest on 8/14/2020. Therefore I went straight to the police department and requested my medication and accessories be returned. It was Dagostino that responded to my request on 8/17/2020.

8.) After speaking with me Dagostino locked the LPD lobby doors and left me in the parking lot, which is confirmed by

pg. 5 of 9

Sommersdorf when he reports that, "Doors to PD <u>still</u> locked." As in, they were locked before and "still" continue to be locked.

9.) Dagostino is the only officer who states the actual reason for me being at the police department the morning of 8/17/2020.

10.) Dagostino makes no mention of a medical emergency or of any immediate danger to anyone in his event report.

11.) I do concede that Dagostino was not involved in the agreement or decision process to take me into custody under the Baker Act, nor did he participate physically in effectuating the Baker Act.

12.) Things I did do:
   A.) I do concede that during the early morning hours and before I noticed officers arriving for a shift change, I was exercising and/or practicing with my staff some martial arts Kata/forms in the empty parking lot of the police department.
   B.) I do concede that I refused to leave the LPD parking lot without my property and that I did accuse them of wrongfully confiscating my prescription medical marijuana and accessories.
   C.) I do concede that the wrongfully taken property that was maliciously taken from my vehicle by LPD officers on 8/14/2020 was my legal medical marijuana prescription along with all of my consumption accessories (to include my medically approved pipes, grinders, and rolling papers). LPD had no authority to confiscate my prescription or my consumption accessories from my vehicle. After the Baker Act LPD did return my prescription and accessories to me.

pg. 6 of 9

13.) Officers violated Fla. Stat § 394.463(5) by declaring a false medical emergency due to an immediate need to treat a non-existing mental illness.

14.) At no point did I hit a fence with my staff (long stick).

15.) At no point did I make obscene statements at police officers.

16.) At no point did I make "irrational statements." I said nothing of the government is after me or that they are spying on me.

17.) There were no reports on 8/17/2020 of me "carrying weapons" or of me "making threats."

18.) On 8/17/2020, the officers gave me no reason for why they thought I was in immediate need of involuntary examination; nor did they ask me if I would agree to such an examination pursuant to Fla. Stat. § 394.463(1)(a)(1).

19.) On 8/17/202, after I peacefully waited for hours in the LPD parking lot for the evidence/property department to open; and after I refused the officers request for me to leave without my property; multiple officers came out from behind the police fence, arrested me and searched me and my car, then they informed me that they had decided to Baker Act me.

20.) I concede that not every officer who was in the group behind the gate came out to search and arrest me. Romanelli, Iozzi, and the police chief were in the larger group behind the police fence that came to the decission to declare a medical emergency and/or Baker Act.

21.) Iozzi was not the Leesburg Police chief on 8/17/2020.

22.) I have never declared or held myself out to be a "special ops" member.

23.) I did serve in the U.S. Air Force as a Firefighter.

P.g. 7 of 9

24.) There were NO reports and/or testimony by EMS transporting personel or LRMC Hospital Staff of a Mental health medical emergency and/or of a man whom is obviously suffering from a mental illness that needs immediate evaluation.

25.) Neither EMS or LRMC Hospital Staff gave any witness reports on any "increasingly strange and concerning behavior that met the Baker Act Criteria"; even though I spent 2 hours and 20 minutes in their medical care and custody.

26.) Pursuant to Fla. Stat. § 394.463(2)(a)(3) hospital personel may declare a Baker Act, yet they don't even show up as witnesses in the Baker Act report.

27.) LPD officers were not expecting to have to call EMS to transport me to the LRMC Hospital in order to get a Covid-19 Test before being admitted to Lifestream for the "Baker Act".

28.) On 8/17/2020 LPD officers effectively chilled my 'sit and wait' protest by declaring a false medical emergency.

29.) Further Affiant sayeth naught.

_____ — 7/29/2025
Angel E. Gaston — Affiant

State of Florida
County of Sumter

Sworn to and subscribed before me by physical presence this __29th__ day of July 2025, by Angel E. Gaston

pg. 8 of 9

Who is personally known to me and has produced a Florida Department of Corrections ID numbered 020151.

_____
Notary Public – State of Florida

Lea Drew
_____
Print name of Notary Public

HH640199   2/13/2029
_____
Serial/Commission Number

7/29/2023
_____
Today's Date.

**LEA DREW**
Notary Public
State of Florida
Comm# HH640199
Expires 2/13/2029

pg. 9 of 9