# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# OCALA DIVISION

ANGEL E. GASTON,

    Plaintiff,

v.     Case No: 5:22-cv-409-WFJ-PRL

CITY OF LEESBURG, et al.,

    Defendants.
_____/

## ORDER

This matter comes to the Court on Defendants, City of Leesburg, City of Leesburg Chief of Police, Nicholas M. Romanelli, John G. Sommersdorf, Dominic Paonessa, John Liston, Joseph Iozzi, Daniel Navarro, Charles Ketchum, Gustavo Escalante, David Carver, Stefano Dagastino, Eric Lamoreaux, and Allen Carter's Motion to Dismiss/Strike Plaintiff's Amended Complaint with Prejudice. (Doc. 118). Defendants Gary Barrett and John Liston's Motion to Adopt Previously Filed Motion to Dismiss/Strike was previously granted. (Doc. 133). Plaintiff filed a Response.[1] (Doc. 138-1). Defendant Paonessa's Motion to Adopt Previously filed Motion to

---

[1] Plaintiff was previously reminded that he was bound by the Local Rules of this Court which limit a response to 20 pages absent leave of Court and warned that the Court will not permit excess pages in future filings absent a compelling need. (Doc. 64). However, Plaintiff ignored that Order and moved to file a 126-page Response with 71 pages of exhibits. (Doc. 138). Due to the age of this case and to expedite ruling on the pending Motion to Dismiss, the Motion (Doc. 138) will be **GRANTED**.

Dismiss/Strike (Doc. 139) is **GRANTED**. After briefing by the parties, the Court grants Defendants' motion.

## I.     LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). When considering a Rule 12(b)(6) motion, the court accepts all factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008) (citation omitted). Courts should limit their consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citations omitted).

## II.     DISCUSSION

Plaintiff is currently serving a 5-year Florida sentence for aggravated stalking and extortion. In his Amended Complaint, Plaintiff sues twenty[2] defendants for alleged violations of his civil rights and various state law claims. (Doc. 18). Specific to this motion to dismiss, Plaintiff claims his First, Fourth, and Fourteenth Amendment rights were violated when multiple officers from the Leesburg Police Department had

---

[2] Plaintiff has failed to serve Unknown Officer #1, Unknown Officer #2, and Unknown Officer #4. Under Rule 4(m), Fed. R. Civ. P., these defendants are hereby **DISMISSED** without prejudice. Defendants LifeStream Behavioral Center, Inc. (Doc. 70) and Unknown Officer #3–Shield Number 1038 (Doc. 132) were dismissed by previous Orders.

2

him involuntarily committed pursuant to Florida's Baker Act.[3] Plaintiff also claims Defendants committed state torts of negligence, false arrest, negligent supervision, and civil conspiracy. Defendants move to dismiss the state law claims for failure to comply with the mandatory pre-suit procedures, to dismiss the Amended Complaint for failing to comply with the Federal Rules of Civil Procedure, or, alternately, that the officers are entitled to qualified immunity and for failure to state a claim. (Doc. 118).

### A. Section 768.28, Florida Statutes

"Florida's doctrine of sovereign immunity prohibits a lawsuit against the state or one of its agencies or subdivisions without the government's consent." *Doe v. G-Star School of the Arts, Inc.*, No. 16-cv-80446, 2016 WL 4625625 at *4 (S.D. Fla. Sept. 6, 2016) (citations omitted). Florida has codified a limited waiver of sovereign immunity, which requires that notice be provided to the state agency and, unless the claim is against a municipality or the Florida Space Authority, to the Department of Financial Services, within three years after the claim accrues. Fla. Stat. §768.28(6)(a) (2019).[4]

---

[3] "'Florida's Mental Health Act, Fla. Stat. § 394.463, frequently known as the Baker Act,' provides procedures for the involuntary commitment and examination of those with mental illness." *Pearson v. Gracepoint*, No. 8:20-cv-1434-T-36JSS, 2020 WL 3965311, at *1 (M.D. Fla. June 24, 2020) (quoting *Anderson v. Snyder*, 389 F. Supp. 3d 1082, 1086 (S.D. Fla. 2019) (citing Fla. Stat. § 394.463(1)).

[4] Section 768.28(6)(a) provides in pertinent part that:
An action may not be instituted on a claim against the state or one of its agencies or subdivisions unless the claimant presents the claim in writing to the appropriate agency, and also, except as to any claim against a municipality, county, or the Florida Space Authority, presents such claim in writing to the Department of Financial Services, within 3 years after such claim accrues and the Department of Financial Services or the appropriate agency denies the claim in writing...

3

The Florida Supreme Court has found that this presuit notice requirement is mandatory. *Levine v. Dade Cnty. Sch. Bd.,* 442 So. 2d 210, 213 (Fla. 1983).

Defendant City of Leesburg is an agency or subdivision of the State of Florida that are entitled to sovereign immunity unless waived. *See* Fla. Stat. § 768.28(2) ("As used in this act, 'state agencies or subdivisions' include ... counties and municipalities ..."); *In re Venable*, 280 B.R. 916, 923 (Bankr. M.D. Fla. 2002) ("The Florida Supreme Court has consistently recognized that counties and municipalities and their agents are entitled to sovereign immunity protection.") (citations omitted).

Concerning state law claims, courts must strictly construe legislative waivers of sovereign immunity. *Wilson v. City of Tampa*, 209 So. 3d 646, 648 (Fla. 2d DCA 2017). Florida courts have found that strict compliance with the statutory notice provision of section 768.28(6)(a) requires that the claim be in writing, and that it assert a claim for compensation. *Id.* at 649; *see also Smart v. Monge*, 667 So. 2d 957, 959 (Fla. 2d DCA 1996) ("at a minimum, the written notification must contain language notifying the agency of a claim; that is, a demand for compensation for an injury.") (citation omitted).

There is no evidence that Plaintiff complied with the conditions precedent contained in Section 768.28, nor did Plaintiff allege compliance. Further, the claims against the City of Leesburg stem from an August 17, 2020 interaction. Thus, Plaintiff

4

had to have submitted his state law claims by August 17, 2023.[5] Plaintiff failed to timely comply with Section 768.28.

"Generally, an action pursued without first satisfying the statutory notice provision must be dismissed without prejudice, so that plaintiff may amend his complaint to comply with the requirement." *Fletcher v. City of Miami*, 567 F. Supp. 2d 1389, 1393 (S.D. Fla. 2008). "However, where the time for notice has expired and it is evident that the plaintiff cannot fulfill the requirement, a dismissal with prejudice is warranted." *Id.*; *see also Levine v. Dade Cnty. Sch. Bd.*, 442 So.2d 210, 213 (Fla. 1983) ("Where the time for such notice has expired so that it is apparent that the plaintiff cannot fulfill the requirement, the trial court has no alternative but to dismiss the complaint with prejudice."). Here, the time to give notice has expired such that Plaintiff cannot fulfill the notice requirement. Therefore, his state tort claims against the City of Leesburg are not amenable to cure and are dismissed with prejudice.

### B. Fourth Amendment - False Arrest (Ground 1)

Plaintiff claims that the Defendants violated his "right to be free from unreasonable search and seizures, where defendants surrounded me, searched me, and arrested me without probable cause." (Doc. 18 at 6). "The defendants then used the excuse of a 'Baker Act' to falsely arrest me without justification and/or meeting the requirements for Florida's 'Baker Act' law." *Id.*

---

[5] By Order dated September 4, 2024, Plaintiff's Notice of Intent to Sue and/or Commencement of Complaint (Doc. 61) was determined to be untimely as to the claims raised in the Amended Complaint. (Doc. 69). Further, Plaintiff's Motion for Tolling of Time on Fla. Stat. Ch. 768.28.(6)(a) (Doc. 62) was denied. *See* Doc. 69.

"The Fourth Amendment protects people from unreasonable searches and seizures." *Roberts v. Spielman*, 643 F.3d 899, 905 (11th Cir. 2011) (citing U.S. Const. amend. IV). "For Fourth Amendment purposes, a seizure occurs when an officer, 'by means of physical force or show of authority, has in some way restrained the liberty of a citizen....'" *Id.* (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n. 16 (1968)). "[I]t is well established that an arrest without probable cause is an unreasonable seizure that violates the Fourth Amendment." *Grider v. City of Auburn*, 618 F.3d 1240, 1256 (11th Cir. 2010). An officer has qualified immunity against Fourth Amendment unreasonable seizure claims, including for seizures for involuntary mental health examination, so long as that officer had "arguable probable cause" to make the seizure. *See May v. City of Nahunta, Georgia*, 846 F.3d 1320, 1328 (11th Cir. 2017) ("To be entitled to qualified immunity from a Fourth Amendment claim, an officer need not have actual probable cause, but only arguable probable cause—that is, the facts and circumstances must be such that the officer reasonably could have believed that probable cause existed.") (alteration and internal quotation marks omitted)); *see also Bright v. Thomas*, 754 F. App'x 783, 786 (11th Cir. 2018) ("[T]he qualified immunity question hinges on whether Officers Sackrider and Wolff had arguable probable cause to detain and commit Mr. Bright under Florida's Baker Act.").

An officer has "arguable probable cause" when a "reasonable officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well-established law." *Gold v. City of Miami*, 121 F.3d 1442, 1445 (11th Cir. 1997). Moreover, whether an

6

officer had "arguable probable cause" depends on the totality of the circumstances. *Cozzi v. City of Birmingham*, 892 F.3d 1288, 1294 (11th Cir. 2018) (citing *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018)).

"Whether an arresting officer possesses probable cause or arguable probable cause naturally depends on the elements of the [statute] and the operative fact pattern." *Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1137–38 (11th Cir. 2007) (internal citation omitted). The Florida Baker Act provides the standard for involuntary mental health examinations as follows:

> (1) Criteria—A person may be taken to a receiving facility for involuntary examination if there is reason to believe that the person has a mental illness and because of his or her mental illness:
>
> > (a) 1. The person has refused voluntary examination after conscientious explanation and disclosure of the purpose of the examination; or
> >
> > 2. The person is unable to determine for himself or herself whether examination is necessary; and
> >
> > (b) 1. Without care or treatment, the person is likely to suffer from neglect or refuse to care for himself or herself; such neglect or refusal poses a real and present threat of substantial harm to his or her well-being; and it is not apparent that such harm may be avoided through the help of willing family members or friends or the provision of other services; or
> >
> > 2. There is a substantial likelihood that without care or treatment the person will cause serious bodily harm to himself or herself or others in the near future, as evidenced by recent behavior.
> > …
>
> (2) Involuntary examination.—

> (a) An involuntary examination may be initiated by any one of the following means.
> ...
>> 2. A law enforcement officer shall take a person who appears to meet the criteria for involuntary examination into custody and deliver the person or have him or her delivered to an appropriate, or the nearest, facility within the designated receiving system pursuant to s. 394.462 for examination.

Fla. Stat. § 394.463.

Drawing from that Baker Act standard, "[i]n the context of a mental-health seizure, when an officer stops an individual to ascertain that person's mental state (rather than to investigate suspected criminal activity), the Fourth Amendment requires the officer to have probable cause to believe the person is dangerous either to himself or to others." *May*, 846 F.3d at 1327–28 (alteration and internal quotation marks omitted). Likewise, to have qualified immunity for Fourth Amendment claims arising out of a mental-health seizure under the Baker Act, an officer "need not have actual probable cause, but only arguable probable cause" to believe the person is a danger to himself or others. *Id*. at 1328. And conversely, "[t]o defeat qualified immunity, [a plaintiff] must demonstrate that reasonable officers—possessing the same knowledge as the defendants—could not have believed that [the plaintiff] appeared to meet the criteria for involuntary examination." *Bright*, 754 F. App'x at 786.

Under Plaintiff's version of the facts—which we must now accept as true and must construe in Plaintiff's favor at this early stage of the proceedings—Plaintiff was in the Leesburg Police Department ("LPD") parking lot waiting for the evidence

department to open so he could "retrieve personal items that had been unlawfully taken by LPD officers on a previous occassion [sic] and to express my critisism [sic] of the recent actions taken by the officers." (Doc. 18 at 10). Plaintiff first interacted with Defendant Dagostino at 2:14 a.m. (Doc. 18 at 28). Dagostino told Plaintiff that LPD is always open, but the evidence department was currently closed. *Id*. at 10. Plaintiff stated he would sit and wait in the parking lot until the office opened in the morning. At 2:53 a.m., Defendant Sommerdorf was dispatched to the parking lot due to a suspicious person report. *Id*. at 30. Sommerdorf reiterated that the evidence department was closed. Plaintiff told him that he was going to sit and wait until the department opened and Sommerdorf said "do whatever you want." *Id*. at 10.

At approximately 6:00 a.m., after a purported shift change, "a few officers" approached and Plaintiff told them he was waiting for the evidence department to open. The officers left with no action of warning given. Those officers met with a group of 7-9 officers, and the combined group approached Plaintiff. Plaintiff took out his cellphone and began to livestream the encounter on Facebook when an officer approached him aggressively. *Id*. at 11. The officer grabbed Plaintiff's wrist and a different officer grabbed the phone. Plaintiff and his car were searched. The officers did not respond when Plaintiff asked what they were doing or what he was being arrested for. Eventually an officer told Plaintiff he was being Baker Acted. *Id*. Plaintiff objected and stated that he did not meet the requirements for a Baker Act, but the officers proceeded to have him involuntarily detained.

9

In addition to his narrative, Plaintiff attached a Field Contact form to the Amended Complaint. The form describes the encounter between Plaintiff and the LPD officers. (Doc. 18 at 39–40). The "Person Information" section notes that Plaintiff had a "Weapon In Possession," a stick. *Id*. at 39. The report states:

> Made contact with subject at the Leesburg Police Department. Subject displayed behavior and made statements that met criteria for Baker Act.
> …
> Clothing Description:
> Shirt: Light Blue fishing shirt  Pants: Khaki shorts  Shoes: None
> Accessories: Broom stick and a ball on a rope. Subject continuously swung ball around on a rope.

*Id*. at 39–40. The report also noted that Plaintiff was using "Abusive Language." *Id*. at 39.

Plaintiff also stated that at the time he encountered the police he needed "to declare a medical emergency." (Doc. 140 at 12). This record shows Plaintiff was taken to the mental health clinic. He was not jailed. (Doc. 1 at 12).

Plaintiff also discloses facts that four days prior to the instant case, he had contact with a local sheriff's deputy. He was at an ice cream store involved in some odd behavior with candles, an ax, knives, and a Samurai sword. (Doc. 140 at 7). When the deputy asked him not to bring weapons, Plaintiff stated "[he] was the weapon." The candles were for a ritual Plaintiff was performing. *Id*. Plaintiff stated he was going to establish a military academy in Leesburg. He was on probation or supervised release at the time. *Id*.

The officers had at least arguable probable cause to involuntarily commit Plaintiff for a mental health examination based on the totality of the circumstances the

officers faced in their encounter with him. At 6:00 a.m., the officers responded to a suspicious person report, *see* Doc. 18 at 32, and observed a shoeless individual that had camped out in the LPD parking lot since 2:00 a.m., holding a weapon—a broom stick—and continuously swinging a ball around on a rope.[6] When approached, Plaintiff used "abusive language." Under these circumstances, the officers had arguable probable cause to believe that there was a substantial likelihood, based on Plaintiff's conduct, that Plaintiff was a danger to himself or others. *See May*, 846 F.3d at 1327–28. Plaintiff has failed to state a claim of a Fourth Amendment violation.

### C. First Amendment Retaliation (Ground 2)

"'[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)). "To state a § 1983 First Amendment retaliation claim, a plaintiff generally must show:" (1) that the plaintiff engaged in constitutionally protected speech; (2) the defendant took retaliatory action that adversely affected that protected speech; and (3) a causal connection between the defendant's retaliatory conduct and the adverse effect on the plaintiff's speech. *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1289 (11th Cir. 2019) (citing *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005)). Showing

---

[6] Plaintiff "concede[s] that during the early morning hours and before I noticed officers arriving for a shift change, I was exercising and/or practicing with my staff some martial arts kata/forms in the empty parking lot of the Police Department." (Doc. 138-3 at 8).

injury alone is insufficient, the retaliatory motive must be the "but-for" cause of the adverse action. *Nieves*, 139 S. Ct. at 1722.

While Plaintiff claims his "sit and wait" was "my way of openly protesting the recent unlawful actions taken by the LPD," it is not clear if Defendants were aware of this protest. *See* Doc. 18 at 10. During the interactions with LPD officers before he was Baker Acted, Plaintiff told them he was waiting (since at least 2:00 a.m.) for the evidence department to open. *Id*. Plaintiff does not plead that he told the officers that he was also protesting or that it was clear to the officers that he was protesting. *See id*. Because Plaintiff has failed to establish that Defendants knew Plaintiff was engaging in protected speech (his protest), he has failed to plead a retaliatory motive, or, alternately, plead that any retaliatory motive was the "but-for" cause of his detention under the Baker Act. Plaintiff has failed to state a First Amendment claim of retaliation.

### D. Civil Conspiracy Claim (Ground 3)

To state a claim for conspiracy under § 1983, a plaintiff must allege that (1) the defendants reached an understanding or agreement that they would deny the plaintiff one of his constitutional rights; and (2) the conspiracy resulted in an actual denial of one of his constitutional rights. *See Hadley v. Gutierrez*, 526 F.3d 1324, 1332 (11th Cir. 2008). The plaintiff must make particularized allegations that a conspiracy exists; vague and conclusory allegations suggesting a conspiracy are insufficient. *See Hansel v. All Gone Towing Co.*, 132 F. App'x 308, 309 (11th Cir. 2005) (citations omitted). Moreover, "merely string[ing] together" discrete acts of individuals fails to

12

demonstrate the existence of a conspiracy. *Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992).

Plaintiff alleges that multiple LPD officers "gathered within the gates and could be seen to have come to an agreement … then, as a group, came out" and approached him. (Doc. 18 at 11). Plaintiff concludes that these officers "conspired as a group to falsely use Florida's 'Baker Act' law as an excuse to unlawfully search and detain me." *Id*. at 14. However, as discussed in Section II(B), above, Plaintiff failed to state Fourth Amendment claim against these officers. Because the alleged conspiracy did not result in the actual denial of one of his constitutional rights, Plaintiff has failed to state a claim.

### E. *Monell* Claim[7] (Ground 4)

A municipality and its supervisors can only be held liable for the actions of its officers under § 1983 where "action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). In contrast with most state tort actions, with § 1983 claims, a municipality such as a county government cannot be held liable under the doctrines of *respondeat superior* or vicarious liability for the constitutional wrongdoings of its employees or its agents. *Id*. at 691. However, "[a] municipality can be found liable under § 1983 ... where the municipality itself causes the constitutional violation at issue." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (emphasis in original). Specifically, "[i]t is only when

---

[7] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

the execution of the government's policy or custom inflicts the injury that the municipality may be held liable under § 1983." *Id.* (internal citation and quotation omitted). In these cases, a plaintiff may establish § 1983 liability if they have been "deprived of constitutional rights by either an express policy or a 'widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom and usage with the force of law.'" *Cuesta v. Sch. Bd. of Miami-Dade Cnty., Fla.*, 285 F.3d 962, 966 (11th Cir. 2002) (quoting *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991)). Moreover:

> [p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker. Otherwise the existence of the unconstitutional policy, and its origin, must be separately proved. But where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the "policy" and the constitutional deprivation.

*City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985).

As stated, a successful *Monell* claim requires an underlying deprivation of a right by the municipality's employee. *See Connick*, 563 U.S. at 60. Because the Court has determined above that there was no underlying deprivation of rights, the *Monell* claim necessarily fails.

Further, Plaintiff's conclusory allegations relate to only a single incident. The Eleventh Circuit has stated that a plaintiff must allege "how the actions taken by the County … amount to a persistent and wide-spread practice resulting in the deprivation

14

of a constitutional right … that is so permanent and well settled as to constitute a custom or usage with the force of law" in order for a district court to plausibly infer municipal liability. *Diaz v. Miami Dade Cnty.*, 849 F. App'x 787, 792 (11th Cir. 2021). Plaintiff has insufficiently plead a *Monell* claim because it is devoid of any facts related to the actual alleged policy, custom, or widespread practice of the LPD that supposedly caused injury to Plaintiff.

### F. State Law Claims (Grounds 5–8)

With the four § 1983 claims dismissed, Plaintiff's negligence, false arrest, negligent supervision, and civil conspiracy remain against individuals. Pursuant to 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over a claim if the court has dismissed all other claims over which it has original jurisdiction. Such is the case here, as only non-diverse state-law claims remain. *See Mills v. Sodexo, Inc.*, No. 8:12-cv-1319-T-33AEP, 2013 WL 3992415, at *2 (M.D. Fla. Aug. 2, 2013). The Court declines to exercise its supplemental jurisdiction over Grounds 5–8 until subject matter jurisdiction can be established.

### III. CONCLUSION

Accordingly, it is hereby

**ORDERED**:

The Court **GRANTS** the Motion to Dismiss (Doc. 118) as follows:

> **a.** Plaintiff's state law claims against the City of Leesburg are **DISMISSED with prejudice.**

    b. Plaintiff's claims in Grounds 1, 2, 3, and 4 are **dismissed without prejudice**.

    c. The Court at this juncture declines to exercise its supplemental jurisdiction authority over the remaining state-law claims brought in Grounds 5, 6, 7, and 8, unless and until federal subject matter jurisdiction is established.

**DONE** and **ORDERED** at Tampa, Florida on September 12, 2025.

_____
WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**

Pro Se Party
Counsel of Record